```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

BOROUGH OF WESTVILLE, NEW       :   Civil No. 14-4652 (JEI/AMD)
JERSEY and TRI-COUNTY           :
MUNICIPAL JOINT INSURANCE       :            **OPINION**
FUNDS,                          :
                                :
        Plaintiffs,              :
                                :
        v.                      :
                                :
CITY OF PHILADELPHIA,           :
                                :
        Defendant.              :

**APPEARANCES:**

MALEY & ASSOCIATES
By:  M. James Maley, Jr., Esq.
931 Haddon Avenue
Collingswood, New Jersey 08108
           Counsel for Plaintiffs

PALMER BIEZUP & HENDERSON LLP
By:  Stephen M. Calder, Esq.
330 Market Street
Camden, New Jersey 08102
           Counsel for Defendant


**IRENAS,** Senior United States District Judge:

   Fire Boat #7, owned by Plaintiff, the Borough of Westville, New Jersey, was damaged allegedly by a large wake caused by the fire boat *Independence* operated by Defendant, the City of Philadelphia, Pennsylvania, during the course of responding to a fire.  The Borough of Westville, and Plaintiff Tri-County Municipal Joint Insurance Fund, seek $140,600 in damages.

1

Plaintiffs assert claims for negligence, as well as constitutional violations pursuant to 42 U.S.C. § 1983.[1] Philadelphia presently moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[2]  For the reasons stated herein, the motion will be granted as to the § 1983 claim and denied as to the negligence claims.

## I.

The Amended Complaint alleges the following facts.

On September 16, 2010, a fire broke out at the BP Petroleum Plant in Paulsboro, New Jersey.  The fire spread to the "4th Dock" at the plant.  Gloucester County Emergency Response (GCER) dispatched Westville's Fire Boat #7 to the scene.

---

[1] The Court exercises federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Diversity of citizenship jurisdiction also exists.
   Additionally, it would appear that this Court might have admiralty jurisdiction over this suit, which arises out of an accident between two vessels occurring on the Delaware River. However, no one has raised any issue concerning admiralty jurisdiction or maritime law, therefore the Court does not address it here.

[2] Philadelphia initially moved to dismiss the original complaint (See Docket #2) Plaintiffs opposed that motion but shortly after they filed their opposition brief, they filed an Amended Complaint.  Thereafter, Philadelphia moved to dismiss the Amended Complaint (See Docket #5) asserting the same arguments it raised in its first Motion to Dismiss.  The first Motion to Dismiss (Docket #2) will be dismissed as moot.

Sometime thereafter, GCER also dispatched Philadelphia's *Independence* to the scene. However, prior to *Independence*'s arrival, the fire was contained, and GCER notified *Independence* to "hold off." "*Independence* made an abrupt turn at excessive speed to return to its dock in Philadelphia. As a result of this abrupt turn, two large wakes pushed [Westville's Fire Boat #7] against industrial equipment docked beside the operational zone and the bulkhead causing severe damage." (Amend. Compl. ¶ 23-24)

The damage to Fire Boat #7 was declared a total loss by a claims adjuster.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2). While a court must accept as true all factual allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form

of factual allegations, unwarranted inferences, or unsupported conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.

The Court first addresses the § 1983 claim before turning to negligence claims.

### A.

Plaintiffs seek to impose § 1983 *Monell* liability on the City of Philadelphia, asserting that Philadelphia had a policy or custom of inadequately training its fire boat operators. Plaintiffs assert that the operator(s) of *Independence*[3] acted negligently and with deliberate indifference and recklessness,

---

[3]  Apparently Plaintiffs do not know the identity of *Independence's* operator(s).  He or she is identified as "John Doe/Jane Doe" in the Amended Complaint, and Count 3 asserts a § 1983 claim against "Defendant John Doe / Jane Doe" operator. Philadelphia has not moved to dismiss this claim, presumably because Philadelphia is not named as a Defendant to the claim.

4

thereby depriving Westville of its property in violation of the 14th Amendment's due process clause.

Philadelphia argues that Plaintiffs fail to state a claim. The Court agrees.

Because Plaintiffs do not allege anything other than a single incident of an alleged constitutional deprivation, their Amended Complaint obviously cannot survive on an "ordinary" failure to train theory, which requires allegations of "'a pattern of similar constitutional violations by untrained employees.'" *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)).

Instead, Plaintiffs must rely on a "single incidence" failure to train theory, which is an uphill battle. The Supreme Court has "*sought not to foreclose the possibility, however rare*, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 131 S. Ct. at 1361 (emphasis added); *see generally id.* at 1359 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").

Nothing about the nature or circumstances of the accident alleged in this case plausibly supports a conclusion that the

5

need for training was "patently obvious." Plaintiffs' conclusory allegation that "the risk of property damage caused by a large wake is so great and obvious that [Philadelphia] should have recognized the need for training on how to avoid causing wakes," is insufficient.

Moreover, the facts pled do not support a plausible conclusion that adequate training would have prevented the damage to Fire Boat #7. *See Id.* at 1358 (stating that a plaintiff bears the burden of proving: (1) a policymaker's deliberate indifference to the need for training and (2) "that the lack of training actually caused" the constitutional deprivation).

Plaintiffs have failed to state a claim for single incidence failure to train liability. Philadelphia's Motion to Dismiss will be granted as to this claim.[4]

---

[4]  In light of this disposition, and because the parties have not raised it, the Court does not address the issue whether the Borough of Westville, a local political subdivision within the State of New Jersey, possesses rights under the Fourteenth Amendment as against Philadelphia, a local political subdivision within the State of Pennsylvania.

The law appears clear that local political subdivisions possess no Fourteenth Amendment rights against other political subdivisions *of the same state*. *See, e.g., South Macomb Disposal Authority v. Washington Tp.,* 790 F.2d 500, 505 (6th Cir. 1986)("the Fourteenth Amendment simply does not prescribe guidelines and impose restrictions upon one political subdivision vis-a-vis another political subdivision. The relationship between the entities is a matter of state concern; the Fourteenth Amendment protections and limitations do not apply."). However, it is unclear whether the same limitation

**B.**

With regard to the negligence claims, Philadelphia makes two arguments.  First, it argues that the Interstate Civil Defense and Disaster Compact (ICDDC), joined by both Pennsylvania and New Jersey, bars Plaintiffs' suit.  Second, it argues that it has statutory immunity under Pennsylvania law.  The Court addresses each issue in turn.

**1.**

The ICDDC, provides in relevant part:

ARTICLE I

The purpose of this compact is to provide mutual aid among the States in meeting *any emergency* or disaster *from* enemy attack or *other cause (natural or otherwise)* including sabotage and subversive acts and direct attacks by bombs, shellfire, and atomic, radiological, chemical, bacteriological means, and other weapons. The prompt, full and effective utilization of the resources of the respective States, including such resources as may be available from the United States Government or any other source, are essential to the safety, care and welfare of the people in the event of enemy action *or other emergency*, and any other resources, including personnel, equipment or supplies, shall be incorporated into a plan or plans of mutual aid to be developed among the Civil Defense agencies or similar bodies of the States that are parties hereto. . . .

. . .

---

would apply to a suit against a political subdivision of another state, as is the case here.

> ARTICLE V
>
> No party State or its officers or employees *rendering aid* in another State pursuant to this compact shall be liable on account of any act or omission in good faith on the part of such forces while so engaged, or on account of the maintenance or use of any equipment or supplies in connection therewith.

N.J.S.A. 38A:20-3, and 35 Pa.C.S. § 7111 (emphasis added).

Philadelphia argues that Article V precludes its liability as a matter of law. In opposition, Plaintiffs argue that the ICDDC only applies in situations of "enemy attack" where "civil defense" is necessary.

Plaintiffs' interpretation of the ICDDC's language has some logical appeal. Relying on *noscitur a sociis*[5], Plaintiffs argue that "emergency," as used in the compact, does not encompass situations such as a local fire, but rather, encompasses only "heightened emergencies that could be considered acts of terrorism or war." (Opposition Brief, p. 9)

The Court need not rule on that argument however, because even if the ICDDC applies, Philadelphia was not in the process of "rendering aid" to the Borough of Westville when the accident occurred.

---

[5] "[T]he canon of construction *noscitur a sociis*—'that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it,'" *Soto v. Scaringelli*, 189 N.J. 558, 572 (2007) (quoting Black's Law Dictionary).

The Amended Complaint clearly alleges that *Independence* never made it to the scene of the fire; GCER directed *Independence* to hold off prior to arrival.  Only then did *Independence* turn around, on its way back to Philadelphia, when it allegedly caused the wake that damaged Fire Boat #7.  Thus, Philadelphia was not "rendering aid" when the accident occurred.  Therefore, Philadelphia cannot invoke the protections of Article V.

**2.**

Philadelphia argues that Pennsylvania's Municipal Tort Claims Act precludes its liability for subrogated claims for insured losses.  *See* 42 Pa.C.S. § 8553(d).

Plaintiffs do not dispute that the Municipal Tort Claims Act prevents recovery of "monies received under a policy of insurance."  (Opposition Brief, p. 11)  Rather, they assert that Plaintiff Tri-County Joint Insurance Fund is not an insurer and does not issue policies of insurance.  According to Plaintiffs, "the Tri-Co JIF is essentially group self-insurance" for the municipalities who contribute to the fund.  (Id., p. 12)

Indeed, the Amended Complaint alleges, "Plaintiff, [Tri-Co JIF] is a municipal joint insurance fund created pursuant to N.J.S.A. 40A:10-36 in which municipalities within Gloucester, Salem, and Cumberland Counties in New Jersey have joined

together for purposes of insuring against property damage."
(Amend. Compl. ¶ 10)

As Plaintiffs correctly observe, such joint insurance funds are explicitly *not* insurers under New Jersey law: "A joint insurance fund established pursuant to the provisions of this act is not an insurance company or an insurer under the laws of this State, and the authorized activities of the fund do not constitute the transaction of insurance nor doing an insurance business."  N.J.S.A. 40A:10-48.

Philadelphia makes no argument in reply.

The Court holds that 42 Pa.C.S. § 8553(d) does not preclude Plaintiffs' recovery of damages in this suit.

## IV.

In light of the foregoing, Philadelphia's Motion to Dismiss will be granted as to the § 1983 *Monell* claim and denied in all other respects.  An appropriate Order accompanies this Opinion.

Date:  March 3, 2015                          ___s/ Joseph E. Irenas___
                                              JOSEPH E. IRENAS, S.U.S.D.J.